IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Christian Emory<br>*Individually and on behalf of all others similarly situated*<br><br>     Plaintiff,<br><br> v.<br><br>The Pizza Cottage LLC and Larry E. Tipton<br><br>     Defendants. | FLSA Collective Action<br><br>THE FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201-219, C.F.R. § 531.35);<br><br>FRCP 23 Class Action (State-Law Claims)<br><br>Article II, §34a of the Ohio Constitution<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT – CLASS AND COLLECTIVE ACTION

  Now Comes Plaintiff, Christian Emory ("Plaintiff"), on behalf of himself and all other persons similarly situated who are current or former servers of Defendants ("Collective Members") and by and through the undersigned attorney(s), sues the Defendants, The Pizza Cottage LLC and Larry E. Tipton, and alleges as follows:

### PRELIMINARY STATEMENT

  1.  This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., for Defendants' failure to pay Plaintiff and other similarly-situated employees all earned minimum wages.

  2.  The Pizza Cottage LLC owns and operates Pizza Cottage restaurants, which are the subject of this lawsuit.

  3.  Defendant Larry E. Tipton owns The Pizza Cottage LLC.

1

4. Defendant Larry Tipton has control over the day-to-day business operations of the corporate Defendants' Pizza Cottage restaurants. Among other things, Tipton has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the company's checking accounts, including payroll accounts, and the authority to participate in decisions regarding employee compensation and capital expenditures. Tipton controls the "purse strings" of his Pizza Cottage restaurants: he signs the corporate checks without limitation as to amount; provides funds to purchase goods, as well as pay employees; and has authority to sign on the checking accounts from which Plaintiff was paid.

5. Defendants have a policy or practice of paying their employee servers subminimum hourly wages under the tip-credit provisions of the FLSA.

6. Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But an employer is not permitted to take a tip credit against its minimum wage obligations (1) when it requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped occupation (i.e., "dual jobs") or (2) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek. See, e.g., *Marsh v. J. Alexander's LLC*, --- F.3d ----, 2018 WL 4440364 (9th Cir. 2018) (concluding that the plaintiff stated two claims for relief under the FLSA–"first, that he is entitled to the full hourly minimum wage for the substantial time he spent completing related but untipped tasks, defined as more than 20% of his workweek; and second, that he is entitled to the same for time he spent on

2

unrelated tasks"); *Driver v. Apple Illinois*, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties … such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time").

7. Defendants violated the FLSA by enforcing a policy or practice of paying servers sub-minimum, tip-credit wages even when they required those employees to perform non-tipped work that is unrelated to their tipped occupation (i.e., "dual jobs").

8. Defendants violated the FLSA by enforcing a policy or practice of requiring servers to perform non-tipped work that, even if it was related to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

## JURISDICTION AND VENUE

9. Plaintiff realleges and incorporate by reference all allegations in all preceding paragraphs.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, et seq. because this civil action arises under the laws of the United States.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff and Collective Members occurred within the Southern District of Ohio, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in –

this judicial district.

## PARTIES

12. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

13. Plaintiff is an individual residing in Muskingham County, Ohio and is a former employee of Defendants.

14. Plaintiff Christian Emory was employed as a server at Defendants' Pizza Cottage restaurant located in Zanesville, Ohio from approximately March 2019 – July 2019.

15. At all material times, Plaintiff Christian Emory was paid by Defendants at an hourly rate less than the full minimum wage as a tipped employee subject to the FLSA.

16. Defendants employed Plaintiff to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, bussing tables, washing dishes, preparing food and other side work.

17. At all material times, Plaintiff Christian Emory was an employee of Defendants as defined in 29 U.S.C. § 203(e)(1) and was a non-exempt employee under 29 U.S.C. § 213(a)(1).

18. Plaintiff has given his written consent to be a representative Plaintiff in this action pursuant to 29 U.S.C. § 216(b), true and accurate copies of which is appended hereto as Exhibit A.

19. At material times as alleged in this Complaint, The Pizza Cottage LLC was a limited liability company duly licensed to transact business in the State of Ohio.

20. Defendants do business, have offices, and/or maintain agents for the transaction of its customary business in Ohio.

21. Defendants are Plaintiff's and the Collective Members' "employer," as defined by the FLSA. 29 U.S.C. § 203(d). The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.

22. At material times as alleged in this Complaint, Defendants had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's and the Collective Members' employment with Defendants. As an employer, Defendants are subject to liability under the FLSA.

23. All Pizza Cottage restaurants are directed and controlled by the Defendants.

## STATEMENT OF FACTS

24. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

25. Plaintiff and the Collective Members, in their work for Defendants, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

26. Defendants paid Plaintiff and the Collective Members a sub-minimum wage, ostensibly according to the tip-credit provisions of the FLSA, which allow an employer to pay an hourly wage less than the statutory minimum wage, provided that the employer complies with the requirements of the tip-credit provisions of 29 U.S.C. § 203(m). However, Defendants did not comply with the requirements of the tip-credit provisions and thus cannot avail themselves of the tip-credit provisions of the FLSA.

27. Defendants regularly and frequently required Plaintiff and the Collective Members to perform a number of non-tipped duties unrelated to their tipped occupations,

including but not limited to: washing dishes, cleaning bathrooms, cleaning the party room, changing out trash, working the drive-thru window, taking out trash; scrubbing walls; sweeping floors; cleaning booths; refilling the soda station; refilling the ice machine; breaking down and cleaning the server line; ensuring the general cleanliness for the front of the house; detail cleaning throughout the restaurant; stocking stations throughout the restaurant; stocking and setting tables; bussing tables; greeting and seating customers; cleaning the soda fountains; cleaning the kitchen, cleaning ledges and window sills, cleaning high chairs and booster seats, sweeping under tables, cleaning menus, refilling salt and pepper, filling ketchup and steak sauce, wiping sauce, portioning food.

28. Defendants paid Plaintiff and the Collective Members at an hourly rate less than the full minimum wage for all hours that Plaintiff and the Collective Members worked for Defendants, including the periods during which Plaintiff and the Collective Members were performing non-tipped duties.

29. Defendants regularly and frequently required Plaintiff and the Collective Members to perform a number of non-tipped duties related to their tipped occupation, including but not limited to: preparatory and workplace maintenance tasks such as sweeping floors; cleaning booths; stocking stations throughout the restaurant; stocking and setting tables; bussing tables; stocking ice; brewing coffee; and preparing specialty drinks such as lemonades.

## COLLECTIVE ACTION ALLEGATIONS

30. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

31. Plaintiff and the Collective Members bring the FLSA claims in this action as

6

a collective action under 29 U.S.C. § 216(b).

32. Plaintiff asserts those claims on behalf of himself and on behalf of all similarly situated tipped employees employed by Defendants who were not paid all compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

33. Plaintiff seeks to notify the following employees of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> All individuals who worked at any time during the past three years at any Pizza Cottage restaurant owned or operated by Defendants and who were paid for their work on an hourly basis according to the tip credit provisions of the FLSA (i.e. an hourly rate less than the applicable minimum wage, excluding tips).

34. The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255. As alleged above, Plaintiff and similarly situated employees' claims arise out of Defendants' willful violations of the FLSA.

35. Accordingly, the Court should require appropriate notice of this action be given to all tipped employees employed by Defendants within three years from the filing of this Complaint.

36. The identities of these employees, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

37. Because these similarly situated tipped employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this

action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

38. Defendants' tipped employees which Plaintiff seeks to notify have been subjected to company-wide policies, procedures, labor targets and compensation practices. Collective adjudication is appropriate in this case because the tipped employees whom Plaintiff and the Collective Members wish to notify of this action have been employed in positions similar to Plaintiff and the Collective Members; have performed work similar to Plaintiff and the Collective Members; and have been subject to compensation practices similar to those to which Plaintiff and the Collective Members were subjected, including unlawful payment of sub-minimum wages for non-tipped work and unlawful application of the FLSA's tip credit provisions.

39. The tipped employees which Plaintiff seeks to notify have been required by Defendants to perform non-tipped labor unrelated to their tipped occupation and to perform nontipped labor related to their tipped occupation which exceeds twenty percent of the hours worked by said tipped employees in any given work week. As such, the tipped employees which Plaintiff seeks to notice have claims common to the claims of Plaintiff and the Collective Members and are similarly situated to Plaintiff and the Collective Members.

## OHIO CLASS DEFINITIONS AND RULE 23 ALLEGATIONS

40. Plaintiff brings the Claims for Relief for violation of Ohio's Constitution as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following class (the "Ohio Class") comprised of:

**A. Ohio Class**
All current and former servers who worked at one of the Defendants' owned Pizza Cottage restaurants in Ohio at any time during the applicable limitations period covered by the filing of this Complaint (three years prior to filing) up to and including the date of final judgment in this matter.

8

B. **Rule 23 Allegations**

### 1. Numerosity (Rule 23(a)(1)).

41. The potential quantity of members of the proposed Ohio Class as defined is so numerous that joinder of all members would be unfeasible and impractical. The quantity and identity of such membership is readily ascertainable via inspection of the Defendants' employment and payroll records.

### 2. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

42. There are common questions of law and fact as to the members of the Ohio Class which predominate over questions affecting only individual members which include, but are not limited to, the following:

    a. Whether Defendants failed to keep accurate records of all hours worked and wages earned by members of the Ohio Class;

    b. Whether Defendants failed to pay members of the Ohio Class the minimum wage in violation of Article II, §34a of the Ohio Constitution and the Ohio MFWSA, Oh. Rev. Code, Chapter 4111.

    c. Whether the members of the Ohio Class are entitled to compensatory damages, and if so, the means of measuring such damages;

    d. Whether the members of the Ohio Class are entitled to injunctive relief;

    e. Whether the members of the Ohio Class are entitled to restitution; and

    f. Whether Defendants are liable to members of the Ohio Class for attorneys' fees and costs.

### 2. Typicality (Rule 23(a)(3)).

43. The claims of the Plaintiff are typical of the claims of all members of the Ohio Class he seeks to represent because all members of the Ohio Class sustained injuries and damages arising out of Defendants' common scheme to maximize profits by skimming wages.

### 3. Adequacy Rule (23(a)(4)).

44. Plaintiff is an adequate representative of the proposed Ohio Class he seeks to represent because he will fairly protect the interests of the members of the Ohio Class, he has no interests antagonistic to the members of the Ohio Class, and he will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

### 4. Injunctive and Declaratory Relief (Rule 23(b)(2)).

45. Injunctive Relief is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the members of the Ohio Class, so that final injunctive relief as requested herein is appropriate respecting the Ohio Class.

### 5. Predominance and Superiority of Class Action (Rule 23(b)(3)).

46. The nature of this action and the nature of the laws available to members of the Ohio Class make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the following reasons:

   a. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

   b. This case involves a large number of individual class members with many relatively small claims. If each individual member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual class member with its vastly superior financial and legal resources;

   c. Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Defendants because of an appreciable and

      justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

  d. Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendants;

  e. Absent class treatment, the prosecution of separate actions by the individual members of the Ohio Class, even if possible, would likely create:

      1. a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

      2. a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

      3. inconsistent or varying verdicts or adjudications; and

      4. potentially incompatible standards of conduct for Defendants.

  f. The claims of the individual members of the Ohio Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

  g. Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

  h. Judicial precedent urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

47. Finally, adjudicating this action on a class basis is appropriate because liability turns on Defendants' own uniform and systematic scheme to maximize profits by depriving its employees of wages, overtime wages, and forcing them to work off the clock. Class-wide liability can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles,

representative testimony, documentary evidence and Defendants' common policies and practices. Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

48. Plaintiff does not contemplate class notice if the Ohio Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, or other forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Plaintiff will, if notice is so required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

49. Defendants paid Plaintiff less than minimum wage to work as a server. Plaintiff was not informed by Defendants' of the tip-credit provisions of the FLSA. Defendants also required Plaintiff to "reimburse" expenses to the restaurant from tips in violation of the FLSA.

50. While paying them sub-minimum wage, Defendants required Plaintiff and the Collective Members to spend over twenty percent of their work time in one or more individual workweeks performing *related* non-tipped work and required them to perform *unrelated* non-tipped duties that had no customer interaction and that did not generate tips. A non-exhaustive list of these duties follows:

    a. Cleaning bathrooms;

    b. Sweeping, mopping, and/or deck scrubbing restaurant floors;

    c. Sweeping up cigarette butts from the patio and/or removing them from the flower beds outside the restaurant;

    d. Washing silverware, food platters, salad plates, and/or glassware;

  e. Taking out garbage;

  f. Cleaning restaurant walls;

  g. Cleaning the soda machines;

  h. Cleaning high chairs and booster seats;

  i. Rolling silverware;

  j. Setting up or breaking down the expo line; and

  k. Portioning Food

  l. Managing the Drive-Thru.

51. Defendants' requirement that Plaintiff and the Collective Members manage the drive-thru while working on tip credit required a substantial amount of time. This task alone often takes multiple hours during a shift.

## COUNT I
## REQUIRED LABOR UNRELATED TO PRIMARY DUTIES OF THE TIPPED OCCUPATATION OF SERVER (FLSA)

43. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

44. Defendants failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, et seq., 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f) by requiring Plaintiff and the Collective Members in a given workweek, and during each and every workweek Plaintiff and the Collective Members were employed by Defendants, to perform non-tipped labor unrelated to their tipped occupation over the course of their regular workweek, while paying Plaintiff and the Collective Members at the tip credit rate.

45. Defendants knew that – or acted with reckless disregard as to whether – their

13

failure to pay Plaintiff and the Collective Members the full applicable minimum wage, without applying the tip credit, for time spent performing labor unrelated to their tipped occupation would violate federal law and Defendants were aware of the FLSA minimum wage requirements during Plaintiff and the Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

46. Such examples of work unrelated to their tipped occupation include but are not limited to cleaning bathrooms, taking out the trash, sweeping and mopping floors, cleaning walls, washing dishes, scrubbing sinks, scrubbing trays and bins, operating the dish tank, and managing the drive-thru window.

46. Plaintiff and the Collective Members are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

**COUNT II**
**REQUIRED LABOR RELATED TO PRIMARY DUTIES OF TIPPED OCCUPATION OF SERVER, BUT IN EXCESS OF 20% OF A GIVEN WORKWEEK (FLSA)**

47. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

48. Defendants failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, et seq., 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f) by requiring Plaintiff and the Collective Members in a given workweek, and during each and every workweek Plaintiff and the Collective Members were employed by Defendants, to perform non-tipped labor related to their tipped occupation in excess of twenty percent (20%) of their regular workweek, while paying Plaintiff and the Collective Members at the tip credit rate. Examples of such non-tipped labor related to their

tipped occupation of servers include, but are not limited to, preparatory and workplace maintenance tasks such as sweeping floors; cleaning booths; stocking stations throughout the restaurant; stocking and setting tables; bussing tables; stocking ice; brewing coffee; and preparing specialty drinks such as lemonades.

49. Defendants failed and/or refused to pay Plaintiff and the Collective Members the full applicable minimum wage according to the provisions of the FLSA for time they spent performing non-tipped labor related to their tipped occupation, despite requiring them to perform such work in excess of twenty percent (20%) of a given workweek, for each and every workweek that Plaintiff and the Collective Members were employed by Defendants, in violation of 29 U.S.C. § 206(a).

50. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the full applicable minimum wage, without applying the tip credit, for time spent performing labor elated to their tipped occupation, but in excess of 20% of any given workweek, would violate federal law and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and the Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

51. Plaintiff and the Collective Members are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

**COUNT III**
**SERVERS REQUIRED TO TO PAY CASH SHORTAGES FROM TIPS (FLSA)**

52. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

15

52. Defendants required Plaintiff and the Collective Members to also be the "bank" for the purpose of accepting payments from customers.

53. Pursuant to WHD Fact Sheet #15, the employer can only use the FLSA 3(m) tip credit if all tips received by the tipped employee are retained by the employee.

54. Defendants maintained a policy such that if there was an accounting discrepancy resulting in a shortage of cash from a server's "bank," that server would be required to pay the cash shortage back to Defendants from their earned tips.

55. Plaintiff, on at least one occasion, was required to pay for a cash shortage from his earned tips.

56. As a result of this policy, Defendants have forfeited the right to utilize the tip-credit and Plaintiff and the Collective Members are owed the differential of the tip-credit and the applicable minimum wage in addition to Attorneys' Fees and Costs and liquidated damages.

## COUNT IV
## DEFENDANTS FAILED TO PROVIDE PLAINTIFF AND THE COLLECTIVE MEMBERS WITH NOTICE OF ITS TIP-CREDIT PAYMENT POLICY (FLSA)

57. Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

58. Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[1] However, in order to take advantage of these wage provisions, the employer must meet certain strict notification requirements.

---

[1] An employer is not relieved of their duty to pay an employee wages at least equal to the

16

59. According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"): "the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13)."

60. As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

61. First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

62. Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

63. Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

64. Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

---

minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage. That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit. Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

65. Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

66. In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

67. An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[2] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

68. Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

69. Defendants failed to follow the notification requirements as set forth in fact sheet #15.

70. In addition, by maintaining and communicating to its servers its policy requiring servers to pay for cash shortages from tips, which is contrary to the tip notification requirements as set forth in fact sheet #15, Defendants have violated the tip-notice requirements.

---

[2] Courts have strictly construed this notification requirement. Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

## COUNT V
## VIOLATION OF ARTICLE II, § 34A OF THE OHIO CONSTITUTION AND THE OHIO MFWSA - (On Behalf of Himself and the Ohio Class)

71. Plaintiff re-alleges and incorporate the previous paragraphs of this Complaint as if fully set forth in this cause of action.

72. The Ohio MFWSA, § 4111.01 (A) defines "wage" as including the reasonable cost to the employer of furnishing "facilities," in language which tracks the FLSA, 203(m) definition of "wage." Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA. (See *Douglas v. Argo-Tech Corp.,* 113 F.3d 67 n. 2 (6th Cir.1997) (noting that Ohio's wage and hour law "parallels the FLSA" and approaching the Ohio law and the FLSA in a "unitary fashion" is appropriate).

73. Each and every violation as alleged within Counts I-III also violates the minimum wage provisions of the Ohio MFWSA § 4111.01 (A). [3]

74. Therefore, and as also alleged above, Plaintiff and Ohio Class members were consistently and uniformly not paid the applicable minimum wage or overtime pay for all the work they performed during the course of their employment with Defendants. Defendants' unlawful conduct was neither inadvertent, nor *de minimis*, but widespread,

---

[3] See *Williams v. Bob Evans Restaurants, LLC*, No. 2:18-CV-01353, 2020 WL 4692504, at *12 (W.D. Pa. Aug. 13, 2020) citing *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)) and holding that "the Sixth Circuit has noted the parallels as well. In *Wood v. Mid-America Management Corp*., the court noted parenthetically that the MFWSA incorporates 'the minimum-wage and overtime-compensation provisions of the FLSA.' 192 F. App'x 378, 379 (6th Cir. 2006). And in *Douglas v. Argo-Tech Corp*., the court stated that Ohio law for overtime pay claims "parallels the FLSA." 113 F.3d 67, 69 n.2 (6th Cir. 1997)." *Williams v. Bob Evans Restaurants, LLC*, No. 2:18-CV-01353, 2020 WL 4692504, at *12 (W.D. Pa. Aug. 13, 2020.

repeated and part of a pattern and practice of conduct affecting Plaintiff and all members of the Ohio Class.

75. As a result of the foregoing, Plaintiff and the members of the Ohio Class have been damaged in an amount to be determined at trial. The Ohio Constitution contains a three-year statute of limitations regardless of whether the violation was willful (the "Ohio Class Period"). Therefore, Plaintiff and members of the Ohio Class are entitled to treble damages and attorneys' fees and costs and other relief, including penalties and interest, for the three-year statute of limitations as this Court deems just and appropriate.

**WHEREFORE**, Plaintiff, Christian Emory, on behalf of himself and all other similarly situated persons, respectfully request that this Court grant relief in Plaintiff's and the Class's and Collective Members' favor, and against Defendants for compensation for unpaid minimum wages, plus an additional equal amount as liquidated damages under the FLSA and twice the amount as liquidated damages for the state-law claims, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

Respectfully submitted,

s/*Michael L. Fradin*
LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
mike@fradinlaw.com
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228