IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHRISTIAN EMORY,** *et al.*, | : |
| Plaintiffs, | : Case No. 2:20-cv-04653 |
| | : |
| v. | : **CHIEF JUDGE ALEGENON L. MARBLEY** |
| | : |
| | : Magistrate Judge Chelsey M. Vascura |
| **THE PIZZA COTTAGE,** *et al.*, | : |
| | : |
| Defendants. | : |
| | : |

**OPINION & ORDER**

**I.      INTRODUCTION**

This matter is before the Court on a Joint Motion to Approve Settlement pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as well as Ohio wage-and-hour statutes, including the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). (ECF No. 10). For the reasons stated below, this Court **GRANTS WITH MODIFICATIONS** the parties' motion for final approval. (*Id.*).

**II.     BACKGROUND**

On September 8, 2020, Plaintiff Christian Emory sued Defendants The Pizza Cottage, LLC ("Pizza Cottage") and Larry Tipton, who owns Pizza Cottage, seeking to represent those similarly situated in a collective action under the FLSA and a class action under Rule 23. Plaintiff alleged that Defendants violated the Fair Labor Standards Act by requiring servers to perform duties unrelated to their tipped duties at the tip-credit rate, by requiring servers to spend more than 20% of their time at the tip-credit rate performing duties related to their tipped duties, by requiring servers to pay cash shortages from their tips, and by failing to provide servers with notice of their

1

tip-credit payment policy. Plaintiff also alleged that Defendants violated the OMFWSA through the same actions that allegedly violated the FLSA.

Defendants answered Plaintiff's Complaint, denying all material allegations and continue to deny that Pizza Cottage's pay practices violated federal or state law. Defendants then provided Plaintiff with discovery in the form of pay records that they contend refute Plaintiff's claims. According to the records produced, Plaintiff was employed by Pizza Cottage from September 14, 2019 until October 3, 2019, during which time, Plaintiff worked a total of 52.50 hours; 2.53 of these hours were compensated at the tip-credit rate. The parties began private settlement negotiations and reached an agreement to settle Plaintiff's claims against Defendants on an individual basis.

### III.   LAW & ANALYSIS

As a general rule, "[t]he FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). One exception is when a court reviews and approves a settlement agreement in a private action for back wages under 29 U.S.C. § 216(b). *Id.* The Court's role in approving an FLSA settlement, and presumably an Ohio wage and hour settlement, "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *See id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *5 (N.D. Ohio Mar. 8, 2010)). Hence, the Court must ensure that there is a bona fide dispute between the parties and that the settlement is a product of arms-length negotiation that was fair, reasonable, and adequate. *See id.* at *5-6.

### A. Whether there was a Bona Fide Dispute Between the Parties

The requirement that there be a bona fide dispute between the parties stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime. *Id.* at *5. Here, Defendants deny liability to Plaintiff on all counts alleged in Plaintiff's Complaint and have produced business records that they contend support their position—a clear bona fide dispute. Further, the Settlement Agreement in this matter was reached through an arms-length negotiation. After the exchange of relevant discovery, both parties, through counsel, discussed the relative merits of their positions, as well as the settlement terms being submitted for Court approval.

### B. Whether Negotiations were Fair, Reasonable, and Adequate

In determining whether a proposed FLSA settlement is fair, reasonable, and adequate, a district court is required to consider and balance several factors: (a) Plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the judgment of experienced trial counsel; (e) the nature of the negotiations; (f) the objections, if any, raised by the class members; and (g) the public interest. *Kritzer*, 2012 WL 1945144, at *6. This Court finds that the balance of factors weighs in favor of approving the Settlement Agreement, albeit with the modifications that this Court prescribes below.

#### 1. Likelihood of Success

The most important factor the Court must consider when approving an FLSA settlement "is the plaintiffs' probability of success on the merits, particularly when weighed against the

3

recovery provided in the proposed settlement agreement." *Id.* The lower the likelihood of success, the more desirable a settlement. *Id.*

Here, counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Plaintiff has alleged that Defendants violated the tip credit provisions of the FLSA by requiring him to: (1) perform unrelated tasks while compensated at the tip credit rate; (2) conduct related tasks that exceeded 20% of his time when compensated at the tip credit rate; and (3) reimburse cash shortages. Plaintiff further argues that Defendant failed to inform him of Pizza Cottage's tip policy. Defendants have raised affirmative defenses and disputed the factual basis for Plaintiff's claims. Further, the parties disagree about whether Plaintiff would be entitled an entire forfeiture of the tip credit or some portion thereof, what tasks Plaintiff actually completed while clocked in at the tipped rate, and whether Plaintiff was ever required to reimburse Pizza Cottage for cash shortages. Based on Pizza Cottage's pay records, it is possible that litigating this case to its lawful conclusion could result in no recovery to the Plaintiff. The disputed issues in this case and the hurdles Plaintiff must overcome favor approval of the Settlement Agreement.

2. *Complexity and Expense of Litigation*

The second factor the Court must consider is the complexity and expense of potential litigation. Here, Plaintiffs faced multiple, and potentially expensive, hurdles to victory. Some of these hurdles include overcoming a motion to dismiss, a motion to oppose certification, and eventually a trial. Additionally, Plaintiff argues that even if he were successful on the merits of their claim, Defendants dispute the amount that would be due to them, so the amount of his recovery is uncertain. The Settlement Agreement eliminates these burdens, and thus, weighs in favor of approval.

### 3. Stage of Proceedings

The third factor is intended to ensure Plaintiffs have had access to the information needed to assess adequately their case and the desirability of the Settlement Agreement. *See Kritzer*, 2012 WL 1945144, at *7. All parties were given the opportunity to assess the merits of the parties' claims and defenses, as well as the potential damages at issue in this case because Defendants provided Plaintiff's counsel with the applicable pay records at issue. Because Plaintiff has had available to them all the information needed to make an informed decision about the settlement, this factor weighs in favor of approval.

### 4. Judgment of Experienced Counsel

By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate. The Court gives great weight to the beliefs of experienced counsel. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (Generally, "[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor weighs in favor of approval.

### 5. Nature of Negotiations

Before approving an FLSA settlement, the Court must be convinced that the parties' Settlement Agreement "is non-collusive and the product of arms-length negotiations." *Kritzer*, 2012 WL 1945144, at *7. Here, the Settlement Agreement is a product of private mediation. Given these representations, the Court is satisfied that the Settlement Agreement is a product of arms-length negotiations.

### 6. Objections by Class Members

In evaluating an FLSA settlement agreement the Court is required to consider objections, if any, raised by class members. The parties do not identify any objections in this case.

*7. Public Interest*

The final factor the Court must consider is whether the public interest would be served by settlement. Because the parties' Settlement Agreement would end potentially long and protracted litigation, the Court finds that this factor weighs in favor of approval. *Kritzer*, 2012 WL 1945144, at *8 ("While this case is not of general public interest, the public interest in favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation.").

In sum, each of the seven fairness factors weigh in favor of approving the parties' Settlement Agreement.

### C. Whether the Attorneys' Fees and Costs Award is Reasonable

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

There are two way to determine whether proposed attorney's fees are appropriate: the lodestar approach and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).

The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (approving of attorney's fees in the amount of 1/3 of the settlement fund). Between these two methods, a district court has discretion to select which is appropriate given the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Reed*, 179 F.3d at 471.

Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Id*. at 501. Courts also frequently consider several factors in determining if attorney's fees are reasonable including:

> (1) the value of the benefit rendered to the class, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides.

*Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *15 (S.D. Ohio Feb. 7, 2014). The party seeking attorneys' fees bears the burden of documenting his entitlement to the award. *Id.* at 472.

Here, the total settlement fund amount is $9,900. Of that, Plaintiff is set to receive $2,000—a greater than 250% premium to the unliquidated amount Plaintiff alleges owed. Plaintiff's counsel is set to receive a total of $7,900 ($7,500.00 in fees and $400.00 in costs). Plaintiff's counsel lodestar is currently $12,750.00, so the requested fees is greater than a 40% reduction to the lodestar.

This Court appreciates counsel's identification of the lodestar method. In this case, which has only been pending since August 2020 and resolves the claim of just one individual, this Court finds it appropriate to use the percentage-of-the-fund method. While the value of the benefit rendered to the individual is high, this case is not particularly complex or onerous. Courts within this Circuit tend to approve fees at 1/3 the settlement amount when using the percentage-of-the-fund method. Thus, this Court will award $3,300 to Plaintiff's counsel, and the remainder—$6,600—going to Plaintiff Emory.

This Court finds that the balance of the below factors weighs in favor of finding percentage-of-the-fund amount reasonable.

1. *Value of Benefits Rendered*

7

Under the proposed Settlement, Plaintiff is set to receive a 250% premium to the unliquidated amount that is alleged to be owed. The Settlement presents a beneficial result for Plaintiff.

### 2. *Societal Stake in Attorneys' Fees*

The second factor, society's stake in rewarding attorneys who produce such benefits, favors the revised fees award. This is because "[s]ociety has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *See id.* at *16. Here, counsel was integral in helping Plaintiffs recover damages for unpaid wages.

### 3. *Whether Services were Undertaken on Contingent Fee Basis*

It is not clear whether counsel undertook this matter on a contingent basis. As such, this third factor neither favors nor undermines the proposed fees award.

### 4. *Value of Services on Hourly Basis & Complexity of Litigation*

As to the fourth and fifth factors, Plaintiff's counsel's lodestar is currently $12,750.00, and Plaintiff's counsel's costs are $400.00. The settlement provides for Defendants to pay $7,500.00 in fees and $400.00 in costs, a greater than 40% reduction to Plaintiff's Counsel's lodestar. This is not a particularly complex suit, however. The instant settlement resolves only one individual's claims, so while this Court does not question the time counsel spent in obtaining a favorable settlement, it does not appear to have been a particularly onerous or complex case. On the other hand, however, nothing indicates that these hourly rates are unreasonable. This factor cuts in favor of the award of attorney's fees calculated under the percentage-of-the-fund method.

### 5. *Skill of Counsel*

The final factor, the professional skill and standing of the attorneys involved, also weighs in favor of the revised fees award. Counsel has detailed the efforts that went into litigating and

8

settling this case, as well as the reputation of the law firms involved. Accordingly, the Court finds that the proposed attorneys' fees and costs award is reasonable.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS WITH MODIFICATIONS** the Joint Motion for Settlement Approval. (ECF No. 10). Plaintiff's counsel will receive 1/3 of the $9,900 settlement, i.e., $3,300, with the remainder, i.e., $6,600, going to Plaintiff Emory. Plaintiff's Complaint is hereby **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: July 21, 2021**